UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 06-42-DLB

DEWEY W. GIBSON                                                                    PLAINTIFF

vs.                         **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                           DEFENDANT

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Dewey Gibson filed an application for disability insurance benefits (DIB) on September 19, 2003. His applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on November 4, 2004 in Hazard, Kentucky.[1] On February 23, 2005, ALJ Don Paris issued a denial decision, finding that Plaintiff was not disabled. On January 4, 2006, the Appeals Council denied Plaintiff's request for further review, therefore, the ALJ's decision stands as the final decision of the Commissioner on Plaintiff's claims.

---

[1] Although the ALJ's decision indicates the hearing was held in Lexington, the record reflects it was conducted in Hazard.

Plaintiff, who was 52 years old at the time of the hearing, dropped out of high school after the ninth grade and alleges an inability to work beginning on September 9, 2003, due to cancer of the kidney, shortness of breath, and back pain.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on February 17, 2006. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (internal quotes and citations omitted). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. See *Jones v. Commissioner,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 26). At Steps 2 and 3, the ALJ found that Plaintiff's chronic obstructive pulmonary disease, renal cell carcinoma status post laparoscopy nephrectomy, chronic pain syndrome resulting from mild arthritis and degenerative disc disease of the lumbar spine were considered "severe" based on the requirements in the regulations, but that these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Tr. 26). The ALJ did not find that Plaintiff had any severe mental impairments. At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a reduced range of light work (Tr. 27). Specifically, the ALJ found that Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently, and stand, walk, or sit for 6 hours in an 8-hour workday (Tr. 27). The ALJ found that Plaintiff could not more than frequently stoop, kneel, crouch, and only occasionally climb stairs/ramps (Tr. 27). The ALJ also found that Plaintiff must avoid exposure to full body vibration and concentrated exposure to extreme heat or cold, and fumes, odors, dust, or gases (Tr. 27).

Based upon that finding, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a mine operator and rock duster in the coal mining industry. (Tr. 27). However, at Step 5, the ALJ determined that there were a significant number of assembly, hand packer, and security jobs in both the local and national economy that Plaintiff could perform (Tr. 27). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC. Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision (Tr. 27).

**C.    Analysis**

In this appeal, Plaintiff argues that the ALJ erred in two important respects. First, he argues that the ALJ failed to find that Plaintiff suffered from a severe mental impairment. Second, Plaintiff argues that the ALJ failed to give proper weight to Dr. Amador, a psychiatrist who performed a one-time examination at the request of his attorney. In response, the Commissioner submits that the ALJ's decision that Plaintiff's mental impairments were not severe is supported by substantial evidence. The Commissioner further argues that the ALJ properly evaluated the medical evidence in his decision.

A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (stating that an impairment is not severe "only if it is a slight abnormality that minimally effects work ability, regardless of age, education, or work experience.")*;* 20 C.F.R. § 404.1520(c). Additionally, and as noted by the Commissioner, a severe impairment must last for a continuous period of at least twelve months. *See* 42 U.S.C. §

4

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(c); *Walton v. Barnhart*, 535 U.S. 212, 217 (2002); *Murphy v. Secretary*, 801 F.2d 182, 185 (6th Cir. 1986).

In this case, substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment. (Tr. 20-23). In his decision, the ALJ noted that Plaintiff alleged in his disability application that he became disabled on September 9, 2003, due to cancer of the kidney, shortness of breath and back pain (Tr. 20, 51, 63, 74, 78). However, Plaintiff did not allege any problems from a mental impairment (Tr. 51, 63, 74, 78). In fact, during the hearing, Plaintiff was asked the following relevant questions relating to the lack of any mental impairment:

> Q. Are you presently being treated by a mental health professional for any mental disorders?
> A. No.
>
> Q. Have you ever been treated by a mental health professional for any mental disorder such as depression or anxiety or panic attack?
> A. No.
>
> Q. Has any of your doctors referred or recommended that you have treatment by a mental health professional for any mental disorders?
> A. No, no.
>
> Q. Do you perceive that most of your problems are physical in nature and not mental?
> A. Yes.
>
> Q. Do you experience any problems being around a crowd or group of people?
> A. No, no.

(Tr. 387)

> Q. The pain that you've described here today, does it ever interfere or disrupt your ability to focus or to concentrate on something?
> A. No, no. I ain't never noticed that.

(Tr. 396).

5

This testimony is consistent the statements made by Plaintiff on his application for benefits wherein he stated that his difficulty sleeping appeared to be related more to his physical pain, as he noted "I'm also up and down through the night with aches and pain" and he discussed not sleeping good at night after discussing his inability to lift or work around the house (Tr. 77, 80).

     After the hearing was concluded, and in an effort to boost his chances at obtaining benefits, Plaintiff was referred by his attorney to Dr. Arthur Amador, M.D. to perform a psychiatric evaluation on November 11, 2004. Because Dr. Amador performed a one-time evaluation, his opinions were properly not evaluated by the ALJ as if he were a treating physician. In his decision, the ALJ discussed Dr. Amador's evaluation in great detail. (Tr. 22, 24). More particularly, the ALJ observed that on examination Plaintiff reported no former treatment by a psychiatrist, and reported Wellbutrin medication prescribed by his treating physician, which the ALJ noted Plaintiff later testified was for smoking cessation. (Tr. 22, 190, 335, 388). Plaintiff was also prescribed Klonopin to help with sleep. (Tr. 335). The ALJ noted that on mental status examination, Plaintiff's speech was normal rate, tone, and volume, and that he fair attention span and concentration, and his thought processes were relevant and coherent, without delusions. (Tr. 22, 336). The ALJ further noted that Plaintiff's memory was intact and his intelligence was estimated at average to below average. (Tr. 22, 336). The ALJ observed that Dr. Amador's diagnosis included major depressive disorder, single episode, severe without psychotic features and alcohol abuse. (Tr. 22, 336). The ALJ noted that Plaintiff's Global Assessment of Functioning (GAF) was estimated at 55 to 60, indicative of moderate symptoms or difficulties in social, occupational or school functioning (Tr. 22, 336). The ALJ observed that in his assessment of Plaintiff's

ability to do work-related activities, Dr. Amador stated that Plaintiff had a fair ability to follow work rules, relate to coworkers, use judgement with the public, interact with supervisors, function independently, maintain attention/concentration, understand, remember and carry out simple, detailed but not complex, and complex job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability, and a poor or no ability to deal with the public, deal with work stresses, and relate predictably in social situations.  (Tr. 22, 337-38).

Upon reviewing the entire record, including Dr. Amador's one-time evaluation and opinions, the ALJ found that Plaintiff did not have a "severe" mental impairment (Tr. 23). Upon independently reviewing the record herein, the Court concludes that this finding is supported by substantial evidence and will be affirmed.  First, and perhaps most significantly, in both his application and at the hearing, Plaintiff alleged only physical maladies.  In fact, the first time any potential mental impairments, severe or otherwise, were raised was at the conclusion of the hearing by Plaintiff's counsel.  (Tr. 402) Secondly, there is no evidence in the record that Plaintiff sought or had been referred for any mental health treatment, a point emphasized in the ALJ's decision.  (Tr. 23, 335, 387).  *See* 20 C.F.R. § 404.1529(c)(3)(v); *Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990) (holding that a claimant's failure to seek treatment undercuts complaints of disabling pain); *Atterberry v. Secretary*, 871 F.2d 567, 571-72 (6th Cir. 1989) (noting a claimant's lack of treatment from a psychologist or psychiatrist as part of the evidence that he did not have a severe mental impairment).  While recognizing that Plaintiff had been prescribed Wellbutrin medication, it was undisputed that prescription was to assist with smoking cessation (Tr. 23, 190, 388).

Based upon the foregoing, the Court concludes that the ALJ's decision that Plaintiff did not have a severe mental impairment is supported by substantial evidence and will be affirmed.

The Court further concludes that the ALJ did not fail to give Dr. Amador's opinions appropriate weight. In his opinion, the ALJ discussed Dr. Amador's evaluation and provided his reasons for rejecting his opinions. (Tr. 23). As a one-time consultative examiner, his opinions were not entitled to the controlling weight of a treating physician. Additionally, despite Dr. Amador's significant list of limitations, because Plaintiff had never sought or been referred for any mental health treatment by any of the physicians who actually treated him, the ALJ rejected those limitations. (*Id.*) Additionally, as referenced herein, Plaintiff has repeatedly acknowledged that his problems were primarily physical. The ALJ was within his zone of choice in relying upon this evidence in rejecting Dr. Amador's evaluation.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #8) is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 27th day of March, 2007.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-42-GibsonMoo.wpd